## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DAQUAN S.,[1] | ) | |
| | ) | No. 19 CV 7804 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | February 2, 2021 |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Daquan S. ("Daquan") seeks supplemental security income ("SSI"), asserting that he was disabled during childhood by anxiety, autism spectrum disorder, auditory processing disorder, major depression, attention deficit-hyperactivity disorder ("ADHD"), and speech and language delays. The court previously considered Daquan's appeals based on prior denials of his original SSI application and twice remanded his claim to the Commissioner. In his current motion for summary judgment, Daquan challenges the Commissioner's third denial of his SSI application. For the following reasons, Daquan's motion is granted, and this matter is again remanded for further proceedings:

### Procedural History

On August 12, 2011, Daquan's mother filed an SSI application on his behalf (he was a minor at the time), claiming that he had been disabled since the age of six

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

and specifying a disability onset date of October 1, 2004. (Administrative Record ("A.R.") 18, 121.) After Daquan's application was denied initially and upon reconsideration, Daquan's mother sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id.) After a hearing in December 2012, the ALJ issued a decision concluding that Daquan is not disabled. (Id. at 18-32, 37-73.) In 2014 Daquan's mother filed a lawsuit on his behalf seeking judicial review and the court affirmed the Commissioner's decision. *See Daquan S. v. Colvin*, No. 14 CV 2640, 2015 WL 2415634 (N.D. Ill. May 19, 2015) (Durkin, J.). After Daquan's mother appealed the court's ruling, the parties filed a joint motion with the Seventh Circuit seeking to remand the matter under Federal Rule of Appellate Procedure 12.1 and Circuit Rule 57. The parties "stipulated that, upon remand, an [ALJ] will reevaluate the opinion evidence . . . [and explain] the weight given to each opinion in the record, and reassess the claimant's functioning." (See No. 14 CV 2640, Dkt. 31 at 2.) The Seventh Circuit granted the motion in October 2015. (Id., Dkt. 34.)

The Appeals Council issued an order in February 2016 remanding Daquan's SSI application to the ALJ with directions to perform an adequate evaluation of the medical opinions of Harcharan Sandhu, M.D., Alison Tait, Ph.D., and Therese Finn, Ed.D. (A.R. 693-94.) The Appeals Council explained that the ALJ's prior decision did not consider Dr. Sandhu's opinion that "the claimant had marked limitations in performing activities of daily living, in interpersonal relationships, and in cognitive/communicative functioning[,]" "did not include Dr. Tait's opinion that the claimant had extreme difficulty with maintaining concentration and focus, and did

2

not complete any schoolwork or assignment without adult assistance and supervision[,]" and "did not evaluate Dr. Finn's opinion that the claimant needed significant support both socially and emotionally at school, as well as in the community." (Id.) The ALJ also ignored Daquan's testimony that he sat in the front of the class and took tests separately with a smaller group, as well as his mother's testimony that both a general teacher and a special education teacher co-taught his classes. (Id.) The Appeals Council therefore directed the ALJ to reweigh the medical opinions, explaining the weight afforded to each, and to reassess Daquan's functioning under the six applicable domains. (Id.)

On remand the ALJ held another hearing in July 2016, (id. at 595-646), and again denied Daquan's SSI application, (id. at 558-87). Daquan filed his second lawsuit in April 2017 seeking judicial review, and in August 2018 this court found in Daquan's favor, remanding his claim to the Commissioner for the second time. (Id. at 1122-42.) Specifically, the court ordered a remand for further evaluation of the medical opinions of record, (id. at 1128-40), and consideration of how Daquan's symptoms limited his ability to function independently before he turned 18, (id. at 1141).

In March 2019 the Appeals Council assigned Daquan's case to a different ALJ for a hearing and the issuance of a new decision. (Id. at 1146.) Daquan appeared for the hearing in July 2019, along with his mother, his lawyer, and a vocational expert ("VE"). (Id. at 1003-31.) On the same day as his hearing, Daquan amended his SSI application to seek a closed period of disability, from August 12,

2011, to December 5, 2015. (Id. at 970.) In August 2019 the ALJ issued a decision concluding that Daquan is not disabled. (Id. at 969-92.) Daquan then filed his third lawsuit seeking judicial review, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 6).

## Child Disability Benefits

A child is considered disabled under the Social Security Act if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Because "disabled children generally do not have a work history," their SSI claims are considered under a framework distinct from that used for adults. *Sanchez v. Barnhart,* 467 F.3d 1081, 1082 (7th Cir. 2006). The first two steps are the same in that the ALJ asks whether the child is engaged in substantial gainful activity and whether he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.924; *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019). Next, the ALJ asks whether the child's impairment meets, or is medically or functionally equal to, an impairment found in the listings. *See L.D.R.*, 920 F.3d at 1150. To determine whether an impairment functionally equals a listing, the ALJ evaluates the severity of its impact in six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). A functional

4

equivalence exists where the ALJ finds that the child has a "marked limitation[] in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.926a(a). A marked limitation interferes "seriously"—and an extreme limitation interferes "very seriously"—with a child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)-(3).

### The ALJ's Decision

In her August 2019 decision, the ALJ found at step one that Daquan turned 18 years old in December 2015 and did not engage in substantial gainful activity during the requested closed period. (A.R. 972-73.) At step two the ALJ determined that Daquan suffered severe impairments of depression, anxiety disorder, ADHD, autism spectrum disorder, auditory processing disorder, and speech and language delays. (Id. at 973.) The ALJ then found that none of Daquan's impairments met or medically or functionally equaled a listing. (Id. at 973-84.) According to the ALJ, Daquan's impairments produced less than a marked limitation in the domains of acquiring and using information, attending to and completing tasks, interacting with and relating to others, and caring for himself, and no limitations in the domains of moving about and manipulating objects and health and physical well-being. (Id. at 984-91.) As such, the ALJ concluded that Daquan was not disabled before he turned 18. (Id. at 991.)

### Analysis

As was the case in his prior appeals, Daquan asserts that the ALJ erred in evaluating the treating sources' opinions and his symptoms. (R. 18, Pl.'s Mem. at 8-

16.)  The court reviews the ALJ's decision only to ensure that it is based on the correct legal criteria and supported by substantial evidence.  *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted).  The ALJ is required to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings."  *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).  But this court is "not free to replace the ALJ's estimate of the medical evidence" with its own, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and must uphold the decision even where "reasonable minds can differ over whether [the claimant] is disabled," *see Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## A.   Medical Opinion Evaluation

In his third appeal, Daquan repeats the same argument he has made for seven years—that the opinion evidence was not properly assessed during the administrative proceedings.  Specifically, Daquan argues that the ALJ improperly evaluated the opinions of treating sources Drs. Sandhu, Finn, and Tait when assessing his functioning as a child.  (R. 18, Pl.'s Mem. at 8-15.)  The government disagrees, asserting that the ALJ provided substantial evidence to support her weighing of the treating source opinions.  (R. 21, Govt.'s Resp. at 5-12.)  This case has been remanded not once, but twice, with instructions to properly assess the opinion evidence.  In 2018 this court issued an opinion highlighting errors in the

previous ALJ's decision, including in her medical opinion evaluation. (A.R. 1122-42.) The court incorporates that opinion here by reference. (Id.)

Under the relevant legal standard for assessing a treating physician's opinion, the medical opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence."[2] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quotation and citation omitted). The newly assigned ALJ found the opinions of Drs. Sandhu, Finn, and Tait to be neither supported by the medical findings nor consistent with the record. (A.R. 980-83.) It is not this "court's role to displace an ALJ's judgment by making [its] own findings about the facts." *Lothridge v. Saul*, ___ F.3d ___, 2021 WL 37503, at *5 (7th Cir. Jan. 5, 2021). Nonetheless, the ALJ must support her medical opinion evaluation with substantial evidence. Here the reasons articulated by the ALJ for discounting the treating sources' opinions do not amount to substantial evidence. *Id.*

### 1. Dr. Sandhu

Daquan asserts that the ALJ erred in ascribing only little weight to the medical opinions of Dr. Sandhu, (R. 18, Pl.'s Mem. at 9-13), a psychiatrist who treated Daquan from June 2011 through at least January 2012, (A.R. 379-85, 445-51, 980). Dr. Sandhu opined that Daquan had marked difficulties in interpersonal relationships and cognitive and communicative functioning and severe difficulty in

---

[2] On January 18, 2017, new regulations issued, eliminating the treating physician rule for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520(c). Because Daquan's mother filed his SSI claim in August 2011, (A.R. 969), the treating physician rule still applies here.

social functioning, rendering him "totally disabled."  (Id. at 445, 453.)  Dr. Sandhu also completed ADHD/behavior disorder and depression reports for Daquan, which included diagnoses of pervasive developmental disorder ("PDD"), learning disorder, and major depressive disorder.  (Id. at 379-82, 449.)  He noted that Daquan: had a history of attention deficit disorder ("ADD") and fidgeted, squirmed, and appeared restless; had difficulty remaining seated; was easily distracted; demonstrated difficulty waiting and frequently expressed frustration; answered questions before the person asking was finished speaking; had difficulty listening to and following instructions; had difficulty sustaining attention; had difficulty organizing work; shifted from one uncompleted task to another; and had difficulty playing quietly. (Id. at 379-80.)  Additionally, Daquan's symptoms affected his sleep, meal times, hygiene, care of property, ability to complete chores, social activities outside the home, and personal interests, and made him irritable, temperamental, and argumentative.  (Id. at 380-81.)  Dr. Sandhu further opined that Daquan suffered from depressed affect or dysphoric mood, anhedonia, disturbed appetite and sleep, psychomotor agitation, depression, fatigue, feelings of guilt and inadequacy, difficulty thinking and concentrating, and social isolation.  (Id. at 383-85.)  He prescribed Prozac and Vyvanse to treat these symptoms.  (Id. at 447.)

The newly assigned ALJ accorded little weight to Dr. Sandhu's medical opinions because, according to her, the evidence did not support the level of impairment he suggested.  (Id. at 980-81.)  The ALJ considered that Dr. Sandhu is "a specialist in treating childhood mental disorders" who treated Daquan during the

closed period of disability at issue here. (Id. at 980.) However, the ALJ determined that Dr. Sandhu only treated Daquan during "a handful of visits" in 2011 and 2012, and he issued his first opinion in October 2011 when his treating relationship with Daquan had been only "brief." (Id. at 981.) The ALJ also found that Dr. Sandhu's opinions, including on a "check-the-box form," were "conclusory and poorly supported" because he did not offer a narrative explanation and his treatment notes were "largely illegible." (Id. at 980-81.) Considering the record as a whole, the ALJ determined that Dr. Sandhu's opinions were inconsistent with medical records, school records, and other evidence. (Id. at 981.)

The ALJ found "more persuasive" the "practical observations" of special education teacher Chris Moran, who taught Daquan language arts in 2011. (Id. at 978, 981; see also id. at 152-59.) The ALJ acknowledged that Moran was not a "medical professional," but in terms of the nature and extent of the teacher's relationship with Daquan, Moran "saw the claimant daily at school and did not note any issues in [Daquan's] personal hygiene and ability to care for himself." (Id. at 981.) The ALJ compared Dr. Sandhu's more "severe" findings with Moran's observations that Daquan required "assistance at times to stay focused" but otherwise had only "slight" difficulty acquiring and using information and in interacting and relating with others. (Id. at 978-79.) After observing the contrast between Dr. Sandhu's opinions and Moran's observations, the ALJ assigned greater weight to Moran. (Id. at 983.)

The ALJ also relied on input from the state agency consultants, who opined that Daquan's impairments were not sufficiently severe to meet or medically or functionally equal any listed impairments. (Id. at 980.) The ALJ noted that one consultant's opinion from January 2012 found a marked limitation in attending to and completing tasks but two subsequent consultants found only a "less than marked" limitation. (Id.) The ALJ determined that the latter assessments were more consistent with the entire record, which she found contradicted Dr. Sandhu's opinions. (Id.)

Daquan argues that the ALJ did not supply "good reasons" for discounting Dr. Sandhu's opinions. (R. 18, Pl.'s Mem. at 9.) Daquan points out that the ALJ gave great weight to state agency consultants who never treated Daquan, while largely rejecting Dr. Sandhu's opinions because his treating relationship with Daquan was "brief," spanning from June 2011 to January 2012, with visits every other month. (Id.; see also A.R. 980.) The ALJ did not address this apparent irony in her rationale, and the government does not offer any explanation. (R. 21, Govt.'s Resp. at 5-10; see also R. 22, Pl.'s Reply at 2 n.9 (citing *Brent v. Astrue*, 879 F. Supp. 2d 941, 951 (N.D. Ill. 2012) ("It is almost ironic, then, that the ALJ discounts the three psychiatrists or psychologists who saw [c]laimant in part because they only saw [c]laimant one to four times each, and then gives significant weight to [a consultant] who never saw [c]laimant.")).)

The government instead asserts that the ALJ was entitled to give greater weight to the input from teacher Moran because he observed Daquan "daily,"

whereas Dr. Sandhu treated Daquan "just every two months." (R. 21, Govt.'s Resp. at 5.) The government cites in particular the ALJ's finding that Moran rendered his opinion "with the benefit of frequent, long-term contact." (Id. at 11 (citing A.R. 983).) But in his October 1, 2011 teacher questionnaire, Moran noted that he had seen Daquan for 42 minutes a day for only a few months. (R. 22, Pl.'s Reply at 2 (citing A.R. 152-59).) The ALJ did not explain how a treating psychiatrist's opinions generated through an eight-month treatment relationship, even with meetings only every other month, warranted less weight than a teacher's observations, albeit daily, over a two-month period in a classroom setting with other students while teaching.

Likewise, the ALJ discounted Dr. Sandhu's opinions because he used "check-the-box" forms provided by Illinois's Disability Determination Services ("DDS") to render his opinions. (A.R. 981.) The ALJ found that "[m]ore [was] needed to support his 'marked' assessment than checkmarks in boxes." (Id.) Yet she afforded great weight to Moran, who also used a checkbox form provided by DDS, without addressing the form of his opinion. (Id. at 983; see also id. at 152-59.) It is within an ALJ's discretion to discount a treating source's checkbox opinion when that decision is supported by substantial evidence. *See Apke v. Saul*, 817 Fed. Appx. 252, 256-57 (7th Cir. 2020). But the ALJ did not explain the apparent inconsistency between discounting Dr. Sandhu's checkbox opinions and granting greater weight to Moran's checkbox opinions. In both cases, Dr. Sandhu and Moran provided handwritten comments to explain their findings. (Compare A.R. 380-81, 385 with

id. at 152-59.)  And in addition to offering opinions using DDS forms, Dr. Sandhu submitted a letter opinion and treatment notes.  (Id. at 445-51.)  Where, as here, the ALJ's reasoning is "internally inconsistent," it fails "to build a logical bridge between the evidence and the result."  *Lothridge*, 2021 WL 37503, at *5.

Daquan also asserts that the ALJ improperly grounded her assessment in speculation.  (R. 18, Pl.'s Mem. at 9.)  The ALJ found that Dr. Sandhu failed to provide sufficient support for his opinions, questioning in particular whether he even observed Daquan as indicated.  (A.R. 981.)  The ALJ did not cite evidence to substantiate her challenge to Dr. Sandhu's credibility.  Regardless, Dr. Sandhu's own notes—which the ALJ described as "largely illegible," (id. at 980)—appear to suggest otherwise.  The handwritten treatment notes, while difficult to decipher, appear to document Daquan's visits with him, as well as the following findings: ADD, including difficulty staying focused and needing redirection, (id. at 448-49, 451); PDD, (id. at 449); developmental delay, (id. at 450); learning disability, including a need for accommodations in school, (id. at 449-50); and autism spectrum, (id. at 451).  In his ADHD/behavior disorder and depression reports, Dr. Sandhu also commented that Daquan is "easily distracted," (id. at 381), needs redirection and prompting with respect to personal hygiene, (id. at 380-81, 385), and participates in special education, (id. at 385; see also id. at 445).  If the ALJ wanted clarification as to Dr. Sandhu's notes, his observation of Daquan, or additional narrative, she should have contacted Dr. Sandhu.  *See Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (finding that if an ALJ cannot "discern the basis for a

treating physician's determination," she should contact the physician for clarification).  As a result, the ALJ's speculation as to whether Dr. Sandhu observed Daquan's behavior appears to lack foundation in the record.

Daquan next argues that the ALJ cherry picked snippets of the record in finding that Dr. Sandhu's opinions lacked support or consistency with the record. (R. 18, Pl.'s Mem. at 9.)  Specifically, he points to the ALJ's determination that the evidence does not support a need for personal hygiene reminders or redirection.  (Id. (citing A.R. 981).)  Daquan argues that the ALJ unfairly focused on the fact that Moran did not report personal hygiene issues at school.  (Id. at 9-10.)  Daquan contends that the ALJ should have explained why a lack of school records reporting hygiene issues negates reports that he needed personal care reminders before school to ensure he had proper hygiene at school.  (Id.)  For support he cites an August 2010 treatment note from a developmental specialist reporting that he needs morning reminders.  (Id. (citing A.R. 315 (reporting that Daquan "needs reminders in the morning" and listing diagnoses of autism spectrum disorder, combined-type ADHD, oppositional defiant disorder ("ODD"), and other sensory and behavioral difficulties)); see also A.R. 321, 903.)  While an ALJ need not cite every piece of evidence in the record, she cannot ignore evidence that contradicts her findings. *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018).  In any event, this court previously found that applicable regulations require an ALJ to determine how limitations affect activities not only at school but also at home and in the

community.  (A.R. 1132-33 (citing SSR 09-1p).)  The ALJ did not do so here, at least with respect to Daquan's limitations regarding personal hygiene.

Daquan further contends that in discounting Dr. Sandhu's opinions, the ALJ selectively considered evidence supporting her conclusion that Daquan did not suffer marked limitations in attending to and completing tasks.  (R. 18, Pl.'s Mem. at 9-10.)  The ALJ noted that 2006 school records reported Daquan needing "many redirections," but a 2015 report indicated he "redirects easily."  (A.R. 981.)  The ALJ concluded that records "during intervening years" did not support marked limitations resulting from attention deficits or required redirection, as opined by Dr. Sandhu.  (Id.)  Daquan asserts that, in so finding, the ALJ ignored evidence that supported Dr. Sandhu's opinions, including Moran's own observations.  (R. 22, Pl.'s Reply at 3-4.)  For example, Moran wrote in his teacher questionnaire that Daquan "needs assistance at times to stay focused," "can be or was very distractable [sic]," and "[n]eeds a lot of structure in a classroom or gets distracted very easily." (A.R. 153, 155.)  Moran also checked boxes stating that Daquan had "an obvious problem" on a daily basis with the following activities: paying attention when spoken to directly; focusing long enough to finish an assigned activity; and organizing his own things.  (Id. at 154.)  Based in part on Moran's reports, a state agency consultant in 2012 determined that Daquan suffered a marked limitation in attending to and completing tasks.  (Id. at 460.)  The ALJ acknowledged the consultant's opinion, (id. at 980), but did not reconcile the evidence supporting that opinion with her own finding that records during this period did not show that

14

Daquan suffers "marked limitations due [to] deficits in attention or requiring redirection," (id. at 981).

Nor did the ALJ address the consistency of Dr. Sandhu's opinions with other evidence of record, despite this court's finding in 2018 that the prior ALJ's assessment of Dr. Sandhu's opinions was undermined by her failure to address such evidence. (Id. at 1133-34.) The court made that finding in the context of the prior ALJ's failure to apply the required regulatory framework for evaluating a medical opinion. (Id. at 1131-38 (citing 20 C.F.R. § 404.1527(c)).) The newly assigned ALJ considered certain of the Section 1527(c) factors, such as the nature and extent of the treating physician's relationship with the claimant and the physician's specialty. (Id. at 980.) Nevertheless, the ALJ largely ignored evidence that supported Dr. Sandhu's opinions. (See id. at 1133-35); *see also Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018). While an ALJ "need not explicitly discuss and weigh each factor" under Section 1527(c), she must minimally articulate her reasoning in a manner supported by the record. *See Collins v. Berryhill*, 743 Fed. Appx. 21, 25 (7th Cir. 2018). Here the ALJ's analysis was undercut by her failure to address evidence that conflicted with her assessment. *See Gerstner*, 879 F.3d at 261-62.

Daquan also argues that the ALJ improperly afforded little weight to Dr. Sandhu's letter opining that Daquan was "totally disabled." (R. 18, Pl.'s Mem. at 11; see also A.R. 445.) The ALJ rejected this opinion, finding that Dr. Sandhu did not explain the meaning of the term "totally disabled," his opinion was

conclusory, and the issue of disability is reserved solely for the Commissioner. (A.R. 981.)  An ALJ may reject a treating physician's opinion that a claimant is unable to work if the decision is supported by substantial evidence.  *See Hapner v. Saul*, 818 Fed. Appx. 552, 555-56 (7th Cir. 2020).  But here the ALJ failed to grapple with the evidence and instead discounted Dr. Sandhu's opinion because he did not define the phrase "totally disabled."  (A.R. 981.)  Daquan points out that if the ALJ lacked clarity as to the meaning of "totally disabled," she could have contacted Dr. Sandhu for an explanation, as provided in applicable regulations.  *See* 20 C.F.R. § 404.1520(b).  As to the ALJ's finding that the opinion was conclusory, while Dr. Sandhu's letter itself lacks an explanatory narrative, (A.R. 981), he also submitted treatment notes, (id. at 446-51), and ADHD/behavior disorder and depression reports, (id. at 379-85), to support his opinion.  With respect to the ALJ's finding that the issue of disability is reserved for the Commissioner, the Seventh Circuit has explained that although the "legal question whether a claimant qualifies for benefits is reserved," when determining a claimant's functioning an ALJ "must consider a treating physician's view that the severity of a claimant's impairments makes her unable to work."  *Knapp v. Berryhill*, 741 Fed. Appx. 324, 327 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(e)(1)).  Here the ALJ summarily dismissed Dr. Sandhu's view as being no "more persuasive" than his checkbox forms. (A.R. 981.)  Accordingly, the court agrees with Daquan that the ALJ's reasons for discounting Dr. Sandhu's opinions are not supported by substantial evidence.

### 2. Dr. Finn

Daquan also argues that the ALJ erred by assigning only little weight to the opinion of Dr. Finn, a certified school psychologist who began treating Daquan for behavioral issues in April 2011. (A.R. 187, 390-92, 429-34.) In December 2011 Dr. Finn sent a letter to the Commissioner setting forth Daquan's diagnoses of ADHD, anxiety disorder, and Asperger Syndrome. (Id. at 441.) She confirmed that Daquan has an individualized education plan ("IEP") and opined that he "needs significant support both socially and emotionally at school, as well as the community." (Id.) Dr. Finn also testified at Daquan's December 2012 hearing and explained that he has difficulties with social interactions because he has autism spectrum disorder. (Id. at 66.) She said that he "definitely" has difficulty concentrating and focusing, having observed symptoms of his ADHD during treatment sessions with him. (Id. at 67.) And she discussed therapies she implemented with Daquan to treat his central auditory processing disorder. (Id. at 69.) The ALJ assigned little weight to Dr. Finn's opinion because, according to her, it was conclusory, inconsistent with the record, and improperly impinged on an issue reserved for the Commissioner. (Id. at 982-83.)

The court finds that the ALJ's assessment of Dr. Finn's opinion suffers the same flaws discussed above. In accordance with the Section 1527(c) factors, the ALJ properly considered Dr. Finn's specialty as a certified school psychologist and the fact that she treated Daquan every three weeks in 2011 and 2012. (Id.; see also id. at 65, 187.) The ALJ found that Dr. Finn's opinion was deficient because of its

conclusory nature insofar as it "fail[ed] to identify the specific areas of functional limitation." (Id. at 982.) In addition to submitting a letter opinion, Dr. Finn submitted progress notes, (id. at 391, 429-34), and testified at the first administrative hearing, (id. at 65-70). The ALJ did not consider the extent to which Dr. Finn's treatment notes supported her opinion, or the fact that the prior ALJ did not ask Dr. Finn for a breakdown by functions when she appeared at the first hearing. (Id.) In any event, Dr. Finn's opinion that Daquan needs "significant" social-emotional support related to ADHD, anxiety disorder, and Asperger Syndrome is relevant to his level of functioning, even if she did not provide specific functional limitations. *See Lambert*, 896 F.3d at 776; *see also Garcia v. Colvin*, 741 F.3d 758, 760-61 (7th Cir. 2013).

As to the inconsistency with the record, the ALJ pointed to Daquan's school records, noting that his functioning improved with treatment and IEP accommodations. (A.R. 982.) The ALJ did not explain how meeting IEP goals or being "mainstreamed" in general education classes demonstrates a greater level of functioning than that reflected in Dr. Finn's opinion. While the ALJ also indicated that Daquan's IEP "significantly improved" his academic performance, January 2012 IEP conferences notes indicate that his "current" grades were at the "C" and "D" levels. (Id. at 222.) And during his senior year of high school, Daquan's math skills were at a sixth-grade level. (Id. at 855.) More problematic for the court, however, is the fact that the newly assigned ALJ failed to consider the extent to

which Dr. Finn's opinion was consistent with the record, despite the court's prior opinion highlighting this error in the previous ALJ's decision. (Id. at 1139-40.)

The ALJ's last reason for disqualifying Dr. Finn's opinion—it touched on an issue reserved for the Commissioner—is not valid, as discussed above. The ALJ was still required to consider Dr. Finn's opinion that Daquan's impairments significantly impacted his social-emotional functioning. *See Knapp*, 741 Fed. Appx. at 327. The court thus finds that the ALJ's evaluation of Dr. Finn's opinion is not supported by substantial evidence.

### 3. Dr. Tait

Finally, Daquan argues that the ALJ erred in evaluating Dr. Tait's opinion. The ALJ assigned no weight to the opinion of Dr. Tait, a clinical psychologist who treated Daquan from 2008 to 2010. (A.R. 982.) In a January 2012 letter to the Commissioner, Dr. Tait reported that Daquan suffers from ADHD, anxiety disorder, and depressive disorder. (Id. at 456-57.) She opined that he has borderline to low average intellectual functioning with significant learning disabilities. (Id.) Because of his anxiety and cognitive impairment, Daquan is "very vulnerable to peer influences" and "easily influenced to do inappropriate activities," according to her. (Id.) Additionally, she concluded that he has "extreme difficulty with maintaining concentration and focus" and "requires adult supervision to complete most tasks in school." (Id.) The ALJ assigned no weight to this opinion because Dr. Tait treated Daquan from 2008 to 2010 but did not submit her letter until January 2012. (Id. at

19

981-82.)  The ALJ also found that Dr. Tait's records do not support her conclusions. (Id.)

Daquan limits his challenge here to the ALJ's alleged failure to consider the Section 404.1527(c) factors in evaluating Dr. Tait's opinion, and to the ALJ's reference to all three treating sources being "sympathetic" to Daquan's application. As to the first challenge, the ALJ properly considered Dr. Tait's specialty in the field of psychology (the ALJ used the term "psychiatry," but Dr. Tait is a psychologist), the nature and extent of her treatment of Daquan from 2008 to 2010, and the fact that she did not submit treatment records to support her opinions.  (Id.)  Again here, however, the ALJ did not address the consistency of Dr. Tait's opinion with the other treating source opinions and other evidence of record.

With respect to the ALJ's comment that the treating sources, including Dr. Tait, appeared to be "sympathetic" to Daquan's disability claim, the Seventh Circuit has found such a statement to be "radically incomplete" when an ALJ "neither explain[s] why she thought the physician was 'apparently sympathetic' nor why she thought that, if so, he must have given false evidence." *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015).  The ALJ's comment here similarly troubles the court because she provided no explanation as to why she believed the treating sources to be sympathetic or why they would have provided false evidence.  The ALJ's assessment of Dr. Tait's opinion thus gives the court pause, particularly given the other errors noted here about her medical opinion evaluation.

**B.  Symptom Assessment**

Daquan asserts that the ALJ erred in assessing his subjective statements of symptoms.  (R. 18, Pl.'s Mem. at 16.)  Typically, the court grants deference to a subjective symptom evaluation because an ALJ can observe the claimant's testimony.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  Nevertheless, an ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal."  *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).  Here Daquan contends that the ALJ selectively focused on certain activities, such as an unsuccessful attempt to work part time and his ability to play basketball, in finding his allegations inconsistent with record evidence.  (R. 18, Pl.'s Mem. at 16.)  The court previously considered similar arguments in its prior order and incorporates its analysis here.  (A.R. 1140-41.)

## Conclusion

For the foregoing reasons, Daquan's request to have the Commissioner's final decision reversed is granted.  The court recognizes that this case has already been remanded twice before to allow the Commissioner to correct errors in the evaluation of treating source opinions.  The court also recognizes that three administrative hearings have been held, and at least seven years have passed since the first denial of Daquan's claim by an ALJ.  (A.R. 18-32.)  Nonetheless, the court cannot say that the record here requires an award of benefits to Daquan.  Accordingly, the court remands the matter to the Commissioner for a new evaluation of the treating sources' opinions.

ENTER:

Young B. Kim
United States Magistrate Judge